JOHN W. HUBER, United States Attorney (#7226)
ANDREW CHOATE, Assistant United States Attorney (#13615)
STEPHEN NELSON, Assistant United States Attorney (#9547)
JENNIFER GULLY, Assistant United States Attorney (#15453)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176`
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. WILLIAM KEEBLER, Defendant. | Case No. 2:16-cr-323 SENTENCING MEMORANDUM Judge David Sam |

The United States, by and through the undersigned Assistant United States Attorney, submits this Sentencing Memorandum. Based on the United States Sentencing Guidelines calculations and the factors set forth in 18 U.S.C. § 3553(a), this Court should sentence the defendant near the high-end of the sentencing range, which has been capped at 70 months pursuant to a Rule 11(c)(1)(C) plea agreement. (*Statement in Advance of Plea*, ECF No. 99 at 3.)

**Background**

(a).  Opening of FBI Investigation on Defendant

The Federal Bureau of Investigation ("FBI") began an investigation into the defendant's activities shortly after the defendant's return to Utah from the Bunkerville, Nevada, standoff

("Bunkerville Standoff") in April of 2014. At the time of the Bunkerville Standoff, Federal Bureau of Investigation ("FBI") intelligence, and the defendant's own Facebook posting, indicated that the defendant first appeared at the Bunkerville Standoff to resist the efforts of the Bureau of Land Management ("BLM") on April 10, 2014. The defendant then remained at the Bunkerville Standoff for approximately two weeks. The defendant was present on April 12, 2014, when the events at the Bunkerville Ranch escalated into supporters of the Cliven Bundy family pointing firearms at BLM personnel. During multiple conversations with FBI informants, the defendant indicated that he played a key role on the Bunkerville Ranch during the opposition of the federal government. The defendant stated that there was "no leadership at the Bundy ranch before he arrived" and that the defendant "was voted to be the command post leader and that (he) operated the command post out of his trailer" during the standoff. The defendant also told sources that during the standoff "(he) was right down there in the middle of it and that (he) had with him 200 snipers, some equipped with 50 caliber firearms." During later conversations, the defendant indicated that he was functionally number one in command of the unorganized militia members at the standoff due to the lack of availability of another leader named Ryan Payne. The defendant departed the Bunkerville Ranch and returned to his home in Utah after a Bundy sympathizer named Jerry Delemus took over the defendant's leadership position at the Bunkerville Ranch.

    (b.) Defendant's Post-Bunkerville Standoff Conduct

Almost immediately after the defendant returned from the standoff against the BLM, he began posting on social media about organizing for future militia deployments that were to be similar in nature to the Bunkerville Standoff. One of the defendant's first Facebook postings after his return from the Bunkerville Standoff was published on April 24, 2014, and it stated that

although he was "at home and safe for now …but this is so damn far from being over… and that he had been asked by (his) upper echelon to further assisting in collecting funds to further (their) shared goal, efforts to STOP THIS TYRANNICAL GOVERNMENT." The defendant further stated that "(o)ur (b)attle for the freedom, and to make a stand to TAKE OUR COUNTRY BACK has in fact just beg(u)n." Shortly thereafter, on May 2, 2014, the defendant posted on Facebook that "(w)e are indeed preparing for another DEPLOYMENT." On May 11, 2014, the defendant posted that "(w)e are now being taken by a rogue government…." Later that same day in response to another post on Facebook, the defendant stated that he was through with measures such as standing on overpasses because they were ineffective. The defendant went on to state "(t)ime for other measures my dear friend. Like it or not IT'S TIME… I answered the call at the Bundy's and now preparing to answer another! WILL YOU?"

      (c.) Defendant Begins a Militia Group

Shortly after his return to Utah, the defendant, who had previously been a part of other militia groups, including the Oath Keepers militia, started his own militia group. He initially named the umbrella organization, for which his militia was a sub-group, the "Patriots of America" ("POA"). Further into the investigation, the defendant renamed the group the Patriots Defense Force "(PDF)" and it became an official sub-group of the umbrella organization he previously started under the name "POA". The overt goals of the Patriots Defense Force were to be a source of protection for the community, to prepare for events such as a military takeover of the U.S. by the U.S. government, defend against overreach of the federal government (as the defendant believed the BLM had done at the Bunkerville Ranch), or preparing for martial law. Sources from the FBI that were members of the Patriots Defense Force indicate that the goals of the PDF were to prepare for future militia deployments, such as the Bunkerville Standoff, or

other violent standoffs with the federal government, deployments to rob narcotics dealers at the U.S.- Mexico border, and the targeting of Muslims. At the time of the defendant's arrest, and at all times throughout this case, the defendant occupied the role of the organizer and commander of the Patriots Defense Force ("PDF") that was headquartered in Stockton, Utah.

The defendant invested considerable amounts of time recruiting individuals for his anti-government militia group. He held events honoring veterans and anti-government sympathizers. He also set up booths at gun shows in order to recruit anti-government sympathizers for his militia group. At these recruitment events, the defendant told potential recruits about his leadership at the Bunkerville Standoff, that the PDF was a defense group that was preparing to defend itself against the federal government or martial law, and that he was a former sniper in the military that taught hand-to-hand combat to special-forces soldiers. The defendant also told potential recruits that he held military style training for members at events called field training exercises or "FTXs".  He also indicated that his militia group was the only recognized militia group in Utah and that he had the support of Utah politicians and local sheriffs.

(d).  Defendant Mobilizes his Militia

By the fall of 2015 and during the early parts of 2016, the defendant was active in controlling his PDF militia and was planning to mobilize his militia force against Muslims, refugees, and the BLM. On September 1, 2015, the defendant was meeting with another embattled rancher named Lavoy Finicum ("Finicum"), who refused to pay his grazing fees to the BLM. During this recorded meeting, Finicum mentioned that he has "not been hassled at all and that he has never had a problem with the BLM." (Exhibit 1, Finicum Recording 1D65 at 8:45.) However, Finicum mentioned that after some "soul searching" he believed that the federal

4

government and BLM had no right to own and administer federal land. (*Id*. at 9:22.) Finicum goes on to explain that he informed the government that he will not pay grazing fees and starts planning for a response to the government that is similar to the response led by the militia at the Bunkerville Ranch. (*Id*. at 19:00.) Finicum goes on to state that "it's all about imagery" and that he "wants to be like the guy standing in front of the tank at Tiananmen Square." (*Id.* at 36:30.) Finicum also states that "if he gets taken out then the cause is the poor rancher's widow" and that "he hopes they'll (BLM) try to do the same thing they did with Cliven and start tryin' to round up my cows with me still afoot." (*Id*. at 37:40-39:40.) During a later militia commander's meeting on October 17 of 2015, Finicum laid out a plan that the defendant would ostensibly help lead to target the BLM on his property. (Exhibit 1, Finicum Recording 1D2, Starting at 3:07.) At all times during these meetings, the defendant was in agreement with Finicum's plans to target the federal government and the defendant pledged to support Finicum with force supplied by his POA/PDF militia group.

  Near the end of October of 2015, the defendant took a trip down to Arizona in order to meet at Finicum's property with two undercover FBI agents and the leader of the White Mountain Militia. While at Finicum's ranch, the group tactically assessed Finicum's property for positions for "defensive strikes" against the government or the BLM. In addition, the group assessed their options for strategic offensive strikes against the government in the event the government tried to take Fincicum's cattle due to his nonpayment of grazing fees. While touring the Finicum ranch and federal grazing allotment, the group (minus Finicum) drove by the cabins that the defendant would later attempt to bomb at Mount Trumbull, Arizona. This is believed to be the defendant's first sightings of these cabins.  After this meeting, Lavoy Finicum rose to national prominence as an occupier of the Malheur Refuge in Oregon who was fatally wounded

5

by law enforcement, as he defied the commands of officers and reached for a loaded sidearm in his jacket, after being stopped during a roadblock in Oregon in late January of 2016.

After this time, the defendant discussed bombing the BLM cabins near the Finicum grazing allotment in Arizona, amongst other targets, including a Mosque in Salt Lake County, Utah, and the BLM office in downtown Salt Lake City, Utah, that would further the agenda of the PDF. The defendant also conducted reconnaissance on both the Salt Lake Mosque and the Salt Lake City BLM office for planning purposes. It was after these reconnaissance missions that the defendant developed a plan to attack a rural target due to his belief that a rural target would be a softer target and less fortified.

During a later field training exercise or "FTX", the defendant approached an FBI undercover employee or ("UCE") who the defendant believed possessed expertise with explosives. Through a series of discussions and a recorded demonstration, where the UCE recorded a sample detonation of a pipe bomb for the defendant, the defendant asked the same UCE to procure two explosive devices for him. The defendant then began to plan a "harassment campaign" wherein he would target government buildings or vehicles, particularly those owned by the BLM, in order to harass their employees and interfere with the BLM's Operations. The defendant then decided that his first target would be the BLM cabins in Mount Trumbull, Arizona. After deciding on these cabins, the defendant engaged in planning (with FBI undercovers and an FBI human source) to detonate a pipe bomb at the door of a BLM cabin in Mount Trumbull, Arizona. This same group, including the defendant, then departed Stockton, Utah, on June 20, 2016 in order to target the cabins at Mount Trumbull, Arizona with an explosive device. Before departing for Mount Trumbull, the defendant was shown the two (inert) pipe bombs that the group would use during their operation. Once the group arrived at

Mount Trumbull, the defendant led the group through a "dry run" wherein they completed a mock detonation of the bomb that was to be placed at the cabin's door. The second day, the defendant engaged in what he believed to be a live operation wherein he detonated an inert radio-controlled pipe-bomb. After the conclusion of this operation, while the defendant believed that he had detonated a radio controlled explosive device, the defendant declared his motive for the bombing and stated "this isn't about Lavoy, it's what he stood for…." The defendant also mentioned that this was only the beginning of the harassment campaign that he had been planning against the government. The defendant was later arrested by FBI SWAT operators at a location in central Utah, without incident. During the defendant's post-miranda interview, the defendant admitted that he was the commander of the PDF militia group as well as admitting his involvement in the plot to bomb the Mount Trumbull Cabins.

## United States Sentencing Guidelines Calculations

The defendant has pleaded guilty to the crime of Attempted Destruction of Federal Property- by Use of an Explosive, in violation of 18 U.S.C. § 1361. *Id*. During his plea, the defendant admitted that he "did travel from Tooele County, Utah to Mount Trumbull, Arizona in an attempt to damage or destroy a federal facility managed by the Bureau of Land Management." *Id*. In addition, the defendant admitted that he "attempted to detonate an explosive in order to damage a Bureau of Land Management Structure." *Id*. The title of the offense combined with the facts that provide the basis for the defendant's guilty plea qualify the defendant for the sentencing enhancement in U.S.S.G. §2B1.5(c)(1). Under the language of the enhancement, the base offense level for the defendant's crime is 24 because he attempted to destroy a government facility or dwelling. (*Presentence Report* at 7.) The PSR properly identifies the total offense level for the crime the defendant pleaded guilty to as a level 21. *Id*. Because the defendant's prior

criminal history is dated by almost 20 years, the defendant has zero criminal history points. Based on a total offense level of 21 with zero assigned criminal history points, the defendant's applicable guideline range is between 37-46 months of imprisonment with 1-3 years of supervised release to follow. *Id*. at 15. Under the terms of the 11(c)(1)(C) plea agreement, the defendant has agreed that any sentence of imprisonment that is between 12 months and one day, and 70 months', is reasonable. (*Statement in Advance of Plea*, ECF No. 99 at 4.)

### Upward Variance is Warranted

An upward departure and variance above the computed guideline range is appropriate in this matter. Under 18 U.S.C. § 3553(a), a court may vary from an advisory guideline range after consideration of certain factors in order to fashion a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. These factors include the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, and to protect the public from future crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A-C). Based on these factors, and the facts of the offense, the defendant is deserving of a sentence close to the agreed upon cap of 70 months in the plea agreement. (*Statement in Advance of Plea*, ECF No. 99 at 4.)

In this matter, the defendant attempted to bomb a cabin managed by the BLM. Just as concerning is that this crime was to be a test run for other similar crimes in the future. At several points during the final operation, the defendant stated that he knew his actions were illegal and that he knew he would be going to "jail" if he were caught by law enforcement. The defendant also stated that he had a contingency plan in the event law enforcement attempted to arrest him after the operation. This plan involved the defendant bringing up the rear of the group and firing

his semi-automatic machinegun, as well as potentially detonating the second bomb that the defendant had requested for the operation, in order to prevent his arrest. The defendant is also part of a national "Patriot" movement, based on anti-federal government rhetoric, whose members espouse extremist ideologies where breaking the law and targeting the government through criminal acts are justifiable. Based on the defendant's actions in this case, the need to promote respect for the law, to deter future criminal conduct- by others and the defendant, and to provide just punishment for the instant offense, the Court should sentence the defendant near the high-end of the sentencing range which has been capped at 70 months pursuant to a Rule 11(c)(1)(C) plea agreement.

Respectfully Submitted,

DATED this 6th day of July, 2018.

JOHN W. HUBER
United States Attorney

 /s/Andrew Choate
ANDREW CHOATE
Assistant United States Attorney